I got the order last week from the court and I understand that the court is interested in hearing about Lockyer v. Andrade and the effect it's had on the definition of unreasonable application of federal law. Among other issues. Among other issues, okay. So I wanted to start right in with that one. I see several things in the Andrade opinion that are significant in this circuit. One is it says that there's not just one correct methodology. So it does not say that the two-step approach adopted in Bantran is incorrect. It simply says that it's not the only methodology and therefore Bantran was incorrect in saying that every case should be handled that way. However, I think that the two-step procedure is a very sensible approach in most cases. And I don't think there's anything in Andrade which says we have to abandon that approach. The other important thing is that it says unreasonable application is not equivalent to clear error. So to the extent the Ninth Circuit has previously adopted that approach, it now has to be abandoned. So do you agree that that makes your job harder? Not necessarily and I'm going to explain why. The most interesting statement, well, let me say first, the court seems to be resistant to giving any further gloss on the unreasonable application standard other than saying it has to be objectively unreasonable. I did go to the Andrade briefs that the test should be phrased as whether the issue is susceptible to debate among reasonable minds. And the court did not adopt that standard. So I think that's a definite indication that they don't want to put any further gloss on it. But there's actually one sentence in the opinion that I found very interesting and perhaps enlightening on this issue, and that is that the court says, uses the word conflating. They say that the error is in conflating error, even clear error, with unreasonableness. And to tell the truth, I don't hear the word conflating very often, but I went and looked it up in the dictionary and it means to blend two things together into one. So it seems to me that the court is saying that error is one thing and unreasonableness is another, and that I think the Ninth Circuit had previously conceived of unreasonableness as some point on the continuum of error, and at some point, error becomes gross enough that it is unreasonable. But I think as I'm reading the Andrade opinion, and the court is pointing us in a different direction, and that is that unreasonableness is something else other than error, whether it be clear error or some other standard, I think it's advising us to, this is my opinion, to look at the process through which the result was reached and consider the reasonableness of that process, not simply the reasonableness of the result. And I'm getting that mostly out of the warning not to conflate the two concepts. Maybe you could apply your rule to this case, then. To this case. Okay. So I think that several factors would be important in determining the reasonableness of the process. For instance, in Andrade itself. Objective reasonableness. The objective reasonableness, yes. In Andrade itself, they looked specifically to the lack of clarity in the Supreme Court precedent that the state court was being asked to apply. So that's one factor that would be considered in the reasonableness of the state court's decision, the fact that the precedent was not very clear. But I think there are other factors that can be taken into account, such as, you know, did the state court opinion actually discuss the issue? Did it address the controlling precedent and try to apply it to the facts? Now, in this particular case, for instance, the character evidence issue was dealt with solely as a question of whether it was admissible under Section 1103. The Court never mentioned due process. It never cited McKinney or any of the Supreme Court authorities on which McKinney was based. Never cited the Constitution. Never even purported to decide the due process. Was the constitutional issue clearly raised? I believe it was, yes. I think that's even been conceded by the Attorney General. So in a case like that, I think there's much less reason to say that the state court's opinion was reasonable because they didn't even address the issue. In fact, I think that in light of this, at least my interpretation, that there's a process issue as well as a result issue, the Court should pay attention to the language of AEDPA, which talks about whether it's an issue that's been adjudicated on the merits. I know in some circuits, well, certainly in the procedural default context, if it's been defaulted but there's cause and prejudice and it's now coming up for the first time in federal court, the courts have said that's not been adjudicated on the merits. But I'm wondering if the same rationale wouldn't apply, for instance, to a summary adjudication, a postcard denial. Has that really been adjudicated on the merits for purposes of AEDPA? And I don't think that necessarily a determination on the merits is necessarily coextensive with an adjudication on the merits under AEDPA. We use the determination on the merits standard in the procedural default context and so forth. Well, I wanted to kind of bring you to the, if it's okay, I'd sort of like to bring you to the facts of this case, because as I understand it, it's a question of evidence that was admitted concerning the character of the victim primarily. And I am, the evidence was admitted before the defense had put in any character evidence, as I understand it. Is that correct? The prosecution evidence of character was put in before the defense had put in any evidence? I'm not entirely clear on the exact. Well, I guess what I wanted to know was, what does the record show with respect to the pretrial as to what the defendant's defense was going to be? He had announced a character defense ahead of time. He had asked in the in limine hearing whether the, he said he was planning at that point to put on a character defense, and he asked whether the prosecutor had any evidence of any kind of bad acts on Mr. Deloach's part. And the prosecutor said, I believe this is a direct quote, I know nothing about his peace and quiet. I have no evidence along those lines. But then, of course, as soon as he put on his character witness, she began with the have you heard questions. Well, would your opinion change if you had heard that he bragged about stabbing? Would your opinion change if you knew that he liked to beat up his girlfriend? You know, that kind of thing, which was coming out of the statements that were made to the police by Michael Moore. And then Moore was eventually put on as a witness to testify about those bragging statements. So, actually, it's not primarily, I wouldn't say it was primarily character of the victim that's an issue. I actually think the most damaging thing here was the negative character evidence about the defendant. Now, the lawyer, Mr. Deloach's lawyer, had in his file at that time the evidence that, in the end, came in against him that the prosecutor said, I don't have. Is that correct? He did have the statement by Mr. Moore, yes. So when the prosecutor says, and I think you've got the quotation virtually correct, I don't know anything about his peace and quiet. I have no witnesses along that line. And then later, that's all I know. I mean, that's the prosecutor. That's not true, is it? The prosecutor is not – I'm not accusing the prosecutor of lying, but that's simply a mistake. That's wrong. That's wrong. She had what – she had the statement by Michael Moore. Now, whether she was intending to use it, I think, was what the defense – Deloach's lawyer also had that same statement. Deloach's lawyer also had it. But under Section 1102, if he put on a character – if he put on character evidence, Michael Moore's testimony still could not come in on rebuttal because it would have to be in the form of reputation or opinion. It could not come in in the form of specific bad acts. So he didn't object to the evidence about the victim. Instead, he waited and cross-examined on that evidence. And thus the prosecutor said he opened the door to character evidence about your claim. What is your response to that? I think that's a highly misconstrued concept of what opening the door is. As I said, I believe in my reply brief, it's my position that you don't open the door by cross-examining a prosecution witness. That goes only to impeach the direct testimony of that witness, and it is not – it is not offering evidence within the correct interpretation of the evidence. But what is the authority that makes that an unreasonable interpretation to permit this as – to permit this to come in as unreasonable? I think it violates fundamental fairness. I think it's – you know, McKinney, it's not relevant to any issue except his propensity. And the Attorney General has admitted that it has no other relevance. Now, aren't prior bad acts generally accepted to be admissible for certain limited purposes? For certain purposes. If they're relevant to an issue other than propensity, if they're relevant to identity, intent, motive, those kinds of things. But here it was not relevant to anything except to show that he was a bad guy who liked knives, you know, who liked to stab people, and therefore would be more likely to be the aggressor in the situation or, you know, more likely to overreact to Hall's attack. What's your best Supreme Court case? Or maybe – I won't limit you to one. Your best Supreme Court cases that say that this evidence should not come in as a matter of federal constitutional law? Well, now, again, I don't think I have to have a Supreme Court case that applies this rule to the facts. But there is, for instance, the Dowling case, which is one that is cited in the McKinney case. I made quite an issue of the McKinney case in my briefing in the state court, but the state court's opinion did not even mention McKinney or any of the Supreme Court authorities cited therein. And Dowling was one of those, which sets up the general rule. And this is a rule that's well established. It's also in the Screws case, which goes back to 1945, and it was well established at that time, which is basically fundamental fairness. If a piece of evidence violates a conception of justice that is – I don't recall the exact language, but it's something to the effect of so rooted in tradition and conscience as to define our notions of fair play, then it's a violation of due process. So that's the general rule that the court should have applied. If I can take you down a different path for a moment, and that is ineffective assistance of counsel. One of the arguments that could be made in your client's favor is that his lawyer at trial should have known the risk he was taking, but first in questioning as to Hall's character and then in putting on the character of Deloach himself. In your view, was it ineffective assistance of counsel to do those two things, both as to Hall and as to Deloach, and if so, why? Well, I would much rather lay the blame at the prosecutor's feet, of course, because I think that her conduct was outrageous throughout the trial. But if it's necessary to get at these issues by ineffective assistance of counsel, then yes, I would say maybe he should have appreciated that risk and maybe he shouldn't have taken the course that he did. Having had Michael Moore's statement in his files, perhaps that was a risk he should not have taken. And should he have realized when he questioned as to Hall's character on cross that this might potentially be opening the door for a general character witness testimony as to his own client? That's what the California court held he did. That he opened the door. Yes. Should he have anticipated that ruling by the California court? I think that ruling is wrong, and so I think it would be highly unlikely that a lawyer would anticipate that. But if that's the correct law, then I guess maybe he should have. Maybe he should have appreciated that risk. And that's a question of California law that we're not in a position to contradict. I mean, that's what the California courts say is California law. The district court did contradict it. Well, I'm not sure the district court has the capacity to tell California courts what their own law is. Right. But then I would go to my next position, which is that if that's California law, then it's unconstitutional as applied because it doesn't give defense counsel appropriate notice that cross-examination of a prosecution witness will be considered offering evidence for purposes of opening up the floodgates to all of this evidence. Okay. So I would prefer to go on the unconstitutional as applied argument. But this man did not get a fair trial, and if it's defense counsel's fault, then let's go with ineffective assistance of counsel. Whatever it takes. He did not get a fair trial. And I would just like to kind of run through chronologically what this prosecutor did. I'm running short on time. Okay. If I could just run through in brief fashion. She opens the trial with a picture of Patrick Hall in a tuxedo. This is after she's already said, I don't have any evidence of bad acts. She's already basically, maybe I shouldn't use the word lied, but has been less than forthcoming about the questions that defense counsel asked. She opens the trial with a picture of Hall in a tuxedo. She says an opening argument. In her opening statements, she bought diapers for my client's baby when my client was unemployed. She says the attraction of going to Will DeLoach's house is that you can get beer and marijuana and maybe other drugs there, too, if you're underage. There was no evidence of any other drugs. And, in fact, the marijuana was supplied by Patrick Hall, not by Will DeLoach. So it's really a twisting of the facts. Then she does the LSD questioning, claiming that Misty Hoffman told the police that she was offered LSD. You look at Misty Hoffman's statement to the police. She never told the police that. In her preliminary examination testimony, she flatly denied it. She was asked, were you offered any other drugs? She said no. The prosecutor goes on with the LSD questioning. At what point does the defense counsel object to this line of questioning? He objected fairly promptly after it came up in a sidebar. He did not object during the actual testimony, but he did call for a sidebar. He voiced his objections to the continuing questioning, and the trial judge said he was considering that a motion to strike and to admonish the jury. So I think that preserves the issue. Did he ever pursue that and ask again from the trial judge to get a ruling on the motion to strike and an admonishment to the jury? I don't believe he ever asked again for a specific ruling on that, but he did continue to object and he did cite it as misconduct when she continued in that questioning. Did he object on the grounds that no foundation had been laid for this evidence to be admitted with respect to the drugs? I don't believe he specified. Doesn't this also then go to the ineffective assistance of counsel claim? Yes, I believe it could. So she does the LSD questioning. Then she, you know, manipulates. She asks Hall the or she asks about. I'm sorry. I'm not going. I want to reserve the rest of my time. Thank you. You have a little over a minute left. Yes, if it might please the Court. First, with regard to the order which. Which you identify yourself for. I'm sorry. My name is Ronald Niver. I'm a deputy attorney general appearing for the state of California, appearing on behalf of the respondent. Appellee. With regard to this court's order of last week, what does unreasonable application mean in light of Lockyer versus Andrade? Well, in Williams versus Taylor, Justice O'Connor advised us that the term reasonableness is a common term in the legal world, and accordingly federal judges are familiar with its meaning. With all due respect to Justice O'Connor, that I think is a little bit misleading. The question of reasonableness is one that the courts are familiar with in a variety of contexts, but not in this context, at least not so far. And the court has. There's really no case at this point, at least no Supreme Court case. There's no case defining what unreasonable means or doesn't mean. Well, yes, it does. Objectively unreasonable. Objectively unreasonable. And the court has said that doesn't mean error. That doesn't even mean clear error. It means something more. And the question is. Does it mean beyond the pale? Well, there are a variety of definitions. I actually consulted Black's Law Dictionary on the issue, and there are a variety of definitions discussing unreasonable. And a couple of them are irrational, preposterous, absurd. I think of those, irrational may be the one which we could be at least most familiar with, because it's used, for example, in reviewing a statute under due process for its constitutionality. A statute is not declared unconstitutional if there is some rational basis within the knowledge or experience of the legislators to support it. And to use the term irrational may be more in line with what the United States Supreme Court believes unreasonable means within the context of the habeas corpus statute. And so the question then is, is this application of the law unreasonable in the sense that it's irrational? That is one possible definition. And there's a second possibility. I like the first better. But the second possibility is that if we look at the concept of reasonableness in other contexts, for example, the Fourth Amendment discusses unreasonable searches and seizures. Now, we've spent the courts have spent what, about 90 years since the decision in weeks defining what reasonableness means. It hasn't happened overnight, and we're still only dimly aware of what's reasonable versus what's unreasonable. So first we decided that a warranted search was presumptively reasonable, and then we talked about the exceptions. And then we, on top of that, we had the administrative search doctrine and so forth. We've been around the same bend with reasonable doubt, too, I think. Exactly. Exactly. But at least in the context of the Fourth Amendment, what we've seen is it hasn't happened overnight. It hasn't happened in 90 years. Well, we might have to start in this case with this particular definition. I have to be honest with you. When I look at this case, and it's not just one thing. It's an accumulation of things. And I put it down, and I say to myself, it appears that this person didn't have a fair trial. Now, whether that's enough is the question. It's an accumulation of things, ineffective assistance of counsel, admission of character, evidence. What can you do to help at least me decide just how, where to draw the line? Well, the question, I think, is not how it appears to Your Honor as a judge as whether or not he got a fair trial. The question is, was it irrational for the state courts, for judges on the state court to conclude that he did get a fair trial? All right. Well, I guess the question is, how do you define irrational? Irrational, I would think in this context, is there any conceivable basis whatsoever on which the judgment can be upheld? And as I say, it's at least indirectly analogous to the constitutionality of a statute. Is there any conceivable basis under which the statute can be upheld? Is there any conceivable basis under which this judgment can be upheld? Sure, like Chevron deference in a criminal case, deference to the state court judge. That's what the statute requires, is deference to the state court judges. That's what Congress has mandated. That's what the Supreme Court has said is to be paid to the state court judgment, deference. And so the question is, did the trial court judge and the three court of appeals justices and the seven Supreme Court justices, were they all irrational in determining that this was not an unfair result in the context of the totality of the circumstances? Here we have a defense counsel, as I read the record, admitting that he was deficient. And assuming that the California Court of Appeal correctly interpreted 1103, how does DeLoach's ineffective assistance of counsel claim fail? Well, the Court specifically addressed that in its own opinion. Even though there was not an IAC claim at the time in the direct appeal, it came later on habeas, the Court said that it was a risk that was taken here because it was conceivable the defense counsel believed that there was greater benefit in impeaching the victim in terms of his propensity for violence than there was risk to the defendant in terms of the subsequent admission of character evidence. What does 1103 say? Well, 1103 is very much analogous to Federal Rule of Evidence 404. And it says that if, and the triggering event starts with the defendant, no evidence can be admitted in the first instance by the prosecutor. If the defendant presents evidence of propensity evidence of the victim in terms of reputation or specific acts, then the prosecution may present evidence to rebut that, that is to say if the evidence is that the victim was known to be violent or had committed bad acts, the prosecutor may then present evidence to rebut that the victim was known for his peace and quiet and was never known for violent acts. And in addition, the prosecution may also present evidence, comparable evidence, showing that the defendant did have such a propensity. And your view is the California State Court ruling that having cross-examined as to Hall's character opened the door on evidence as to DeLoach's character. Was that State Court ruling correct? That State Court ruling is correct as a matter of State law. And is there any question about whether or not that State Court ruling is correct? Not in the context of a Federal claim, there's no question about it. What do you mean by that qualifier? Well, what I'm trying to say, Your Honor, is that we're bound by that finding, by that State Court finding. It's a State judicial application of a State statute, a State evidentiary statute in the context of this trial. And I think that while there was no on-point precedent for it, and the Court of Appeal went to spend some time explaining it, the language of the statute, the plain language of the statute, supported its result. Is it unconstitutional for the State court to have given a surprising interpretation of State court law? No, Your Honor. Thereby leading the defense lawyer into doing something that he might not otherwise have done? Conceivably, no. No, Your Honor, because surprising, it contradicted no prior State court cases. It did not overrule anything. It did not contradict a California Supreme Court opinion. So in your view, in fact, not only is this State court ruling correct for our purposes here on Federal habeas, but it was not even a surprising ruling as a matter of State law? It was a defensible ruling. It was a plausible ruling. Okay. Let me just, was it clear from the beginning that the defense here was going to be self-defense? Well, I think the defense was going to be self-defense. I think that it was fairly clear, because there was no question, that the defendant, the appellant, stabbed the victim. So the only question was the circumstance. Excuse me, Your Honor. There was no question. The only relevant question, the only viable question here was his state of mind. Did he act with malice or forethought? Did he act with reasonable belief in self-defense, in which case he would have been acquitted? Or did he act with unreasonable belief in self-defense, which was the ultimate finding of the jury? So I think that's – I think that was pretty clear that that was going to be his defense. Is there a Supreme Court case that says that where the defense is self-defense, it's a denial of due process for the prosecution to inquire about prior bad acts, either of the defendant or the victim? There is no United States Supreme Court case that precludes such a question or a line of questioning. It would not. So to answer your question, and any – and until – unless and until something is – the United States Supreme Court – as a matter of fact, they reserved the question, or not the question about other crimes evidence in Estalvis and LaGuardia. They didn't even discuss character evidence. And the critical difference here, even if the Court decided tomorrow that propensity evidence was somehow under certain circumstances invalid, this is not propensity evidence, but this is character evidence. And the whole matter is it cannot be raised by the prosecution until the defense approaches the subject. The defendant has a way of keeping all of this out, and that is, in this situation, by not inquiring about prior bad acts. And even – even he could – the defendant in this situation, if he had not asked about bad acts, but had asked about reputation, that would have kept out, as the court of appeal found. That would have kept out the testimony of Moore, who discussed these alleged claims by the defendant that he had once stabbed somebody in Oakland or San Jose, wherever it was. So it's not as if – I'm sorry, Your Honor. I beg your pardon. This question of stabbing, I realize you weren't the prosecutor below, so my questions are not directed at you. But the prosecutor, in closing argument, said that DeLoach had stabbed people previously in Oakland. There was no evidence whatsoever that supported that statement. Now, doesn't defense counsels fail to object to that statement in closing argument just before the jury is going to go out? Raise a question as to adequacy of counsel. Well, as I recall, his affidavit, his custom was not to – It was his custom never to interrupt closing argument or opening argument, but that's not my question. The question is, was it – I think the question is, is it irrational, was it irrational for the California Supreme Court, in denying habeas relief, to find that it was not incompetent? And I don't think it was irrational at all. Can I take you back to the evidentiary question here? Sure. Do I understand your position to be that when the government cross-examined concerning character initially, that the defense counsel could have objected but did not? I mean, that's what happened, isn't it? My recollection of what happened is when the prosecution witness, Gabby Shire, I guess the man's name was, was asked by the prosecutor, did the victim have a reputation for peace and quiet or whatever, and he said, yeah, he was a great guy, or words to that effect. Now, if I understand your position, the defense counsel could have objected to that. And if defense had objected, the prosecution could have said, but they're making character an issue. The defense counsel could have said, no, we're not. We will not put in any evidence or ask any questions concerning the character of the victim or the defendant. Well, my position is what the court of appeals said, which was at that point the evidence would have been inadmissible. Good character evidence of the victim would have been inadmissible under 1202. Correct. But it came in without objection. And why was that not ineffective assistance of counsel right there? Because that sets off the chain of events that we get cross-examination of Darbyshire as to Hall's character. That then is the foundation for the holding. When Moore comes on, well, you've opened the door. This is all fair game. Well, I think that, again, the question is, is it irrational to view it otherwise, which is this was an innocuous question. Well, it was innocuous except that it destroyed his case. Well, it didn't destroy his case at all, Your Honor. As a matter of fact, his case was partially successful, largely successful, because it kept him from a murder conviction. No. Ultimately, if Your Honor wants to discuss prejudice, as the district court found, none of this evidence affected the validity of his essential defense, which was that he honestly believed that he had to act in self-defense. It in no way impugned his claim of an honest self-defense. So it did not destroy his case, as Your Honor views it. But that's an entirely different issue, the question of prejudice. The question was, was it ineffective to allow the prosecutor to ask, does this person have a reputation for good character? And there's nothing inflammatory about it. There's nothing that at any point could move the jury one way or the other. It was just a question that was asked and answered. And as the court of appeal pointed out, there was a valid tactical reason for not objecting, because it did allow the defense counsel to ask the witness, prosecution witness, Davish Shire on cross-examination, well, what about these events of getting into fights, drunken fights with people, things like that. And in that sense, it was potentially a potential, not ultimately, but potentially would serve the defense to allow them to open this door at least that far. If he had objected, here's what I'm trying to understand. If he had objected and the objection had been sustained, then your position is he could not then have cross-examined about the, could not then have asked questions about the bad conduct of the victim in his own evidence. The defense counsel? Yeah. Under 1103, I believe he could have. The problem would not have been 1103. The problem would have been cross-examination. Right. But there was no reason why Davish Shire could not have been, become the defendant's own witness and then could have been asked about these prior instances when he was in a drunken fight or whatever. So an objection, sustained objection to the 1102 evidence would not have precluded subsequent 1103 evidence from coming in. So, no, it would not have foreclosed the entire issue, that failure to object. One last thing before we, actually going back, if you will, to the second question about what the significance of a silent denial. And it was suggested by a defense, by an appellant's attorney, that somehow you look to the process and you look to the opinions and the argument is that there were no citations, in the one-line denial, there were no citations to authority or in the court of appeal opinion. And, therefore, it reveals an unreasonable application. And I think that it was foreclosed in Early v. Packer, in which the court said that avoiding the pitfalls of error under Williams v. Taylor does not require a citation of our cases. Indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state court decision contradicts them. So, ultimately, you look to the result and if in a one-line denial there is no reasoning, then it's presumed that the court followed the correct law. And then if the result is rational, relief must be denied. Thank you, Your Honor. The time has expired. Thank you. Okay. Just briefly, on the question of whether defense counsel could have kept out the prior bad acts evidence, yes, he could have kept it out. If he had not, Section 1103 is the only section that allows testimony with respect to specific bad acts as opposed to reputation or opinion testimony. So if he had objected to the testimony about Hull's good character, and then even if he had put on his own character defense, Michael Moore could not have testified about those prior bad acts. The only thing that allowed him to testify was that, supposedly, defense counsel opened the door by cross-examining about Hull's specific bad acts. On the question of Delgado. I'm sorry. Could I interrupt you just on that specific point? How obvious should it have been to defense counsel at that point by cross-examining Darbyshire as to Hull's character that he was opening the door? Well, there was no, at that point, as far as I know, there was no California opinion saying that cross-examination would open the door. And so it would strictly have been a reading of the statute that could have alerted him to that. Okay. As far as Delgado and Early v. Packer, Early v. Packer says you don't have to cite a Supreme Court case, but that was not a summary denial case. There was a full discussion. And actually, Early v. Packer criticized the way in which the Ninth Circuit criticized the state court's opinion so that it's not really a summary denial case. I think in Delgado, obviously, you have to stay away from the clear error language. But, again, perhaps the way to go there is to say that a summary denial is not an adjudication on the merits. For purposes of info. Your time is expiring. Thank you, Counsel. The case just argued is submitted for decision.
judges: Schroeder, Dw Nelson, W. Fletcher